UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal No.: 4:07-cr-1034-RBH |
| ) | |
| v. ) | **ORDER** |
| ) | |
| PETER ZAVELL, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the court on Defendant, Peter Zavell's, [Docket Entry #147] motion to withdraw his plea of guilty. A hearing was held on Defendant's motion on June 30, 2009. For the reasons that follow, Defendant's motion is denied.

## **Background**

On August 28, 2007, Peter Zavell and his wife Susan Zavell were indicted in a three count indictment, which alleged: 1) conspiracy to defraud the United States; 2) willfully making and subscribing to a false tax return on or about March 26, 2001; and 3) willfully making and subscribing to a false tax return on or about October 13, 2002. On January 13, 2009, as a result of a plea agreement, Peter Zavell pled guilty to count 2 of the indictment: willfully making and subscribing to a false tax return on or about March 26, 2001. [Docket Entry #142, Guilty Plea]. A plea hearing was held in which the court engaged Dr. Zavell in the standard plea colloquy. [Docket Entry #150-2, Plea Hearing Transcript]. After making the findings that Dr. Zavell was fully competent and capable of entering an informed plea and that his plea of guilty was knowing and voluntary and supported by an independent basis in fact, the court accepted Dr. Zavell's guilty plea. *Id*. at 24.

In the plea agreement, the government agreed, among other things, to:

1. dismiss the remaining counts of the indictment, *including the charges against Susan Zavell*;[1]

2. fix the amount of tax loss at $244,784;

3. not oppose a variance motion provided Dr. Zavell tendered the full amount of tax loss - $244,784; and

4. not oppose a sentencing date up to twelve months after the date of the change of plea.[2]

Defense counsel argues that the purpose behind the above cited provisions of the plea agreement was to allow Dr. Zavell 12 months to work as an emergency room physician so that he could make the substantial restitution required for the government not to oppose a motion for a variance.

After pleading guilty, Dr. Zavell received a letter from the Centers for Medicare and Medicaid Services ("CMS") informing him that his Medicare Provider Number and his National Provider Identifier had been revoked effective January 13, 2009. Dr. Zavell was subsequently terminated from his employment with the hospital and has apparently been unable to find work as a physician since that time.

---

[1] While Susan Zavell's counsel indicated during the hearing that she would agree to be re-indicted, there is no indication regarding whether the statute of limitations would be raised as a defense after re-indictment.

[2] Paragraph 10 of the plea agreement states:
> The Government agrees not to oppose a variance motion based on the amount of restitution paid if the Defendant tenders to the Court on the date of sentencing the full $244,784.00 outstanding tax owed. The Government has no such obligation if the Defendant does not pay the full $244,784.00 on the date of sentencing. The Government further agrees not to oppose a sentencing date up to twelve months after the date of the change of plea.

Dr. Zavell now argues that because he cannot work as an emergency room physician and earn the money required to pay the full tax loss, the purpose of the plea agreement has been frustrated. Dr. Zavell also contends that CMS, which revoked his provider numbers, is a division of the United States government, and therefore the government has breached the plea agreement by frustrating Dr. Zavell's ability to pay full restitution and earn a variance. Based on those circumstances, Dr. Zavell contends that he should be permitted to withdraw his guilty plea.

## **Discussion**

As an initial matter, Dr. Zavell's contention that CMS and the Assistant U.S. Attorneys prosecuting this case are one in the same, or that the actions of one can be attributed to actions of the other, is without merit. The cases cited by Dr. Zavell involve situations in which courts were analyzing the actions of one U.S. Attorney's office and whether those actions could be attributable to another U.S. Attorney's Office. In this case, there is no authority for attributing CMS's revocation of Dr. Zavell's provider numbers to the A.U.S.A's prosecuting this case. In fact, A.U.S.A. Holliday contacted CMS to inform them of the unique situation this case presented. Although his efforts were unsuccessful, Mr. Holliday's actions suggest that the U.S. Attorney's office was acting in good faith, and more importantly, confirm the fact that the U.S. Attorney's office has no control whatsoever over CMS. CMS does not fall within the term "government" as it is used in the plea agreement, and certainly CMS's actions are not attributable to the Assistant U.S. Attorneys in this case. Accordingly, CMS's revocation of Dr. Zavell's provider numbers does not amount to a breach of the plea agreement by the "government."

Additionally, the revocation of the CMS provider numbers did not frustrate the plea agreement. Nowhere in the plea agreement was it stipulated or agreed to that Dr. Zavell was required to work as a physician. The plea agreement did not provide that Dr. Zavell would be permitted to withdraw his plea in the event he became unemployed for any reason. The plea agreement simply provided that the government would not oppose a motion for a variance if Dr. Zavell repaid the full tax loss. The plea agreement did not guarantee that Dr. Zavell would receive a variance for substantial restitution nor did the plea agreement bind this court to grant a variance based on substantial or extraordinary restitution.[3] By the same token, there is nothing prohibiting the court from granting a motion for variance for other reasons aside from extraordinary restitution.

Whether to grant or deny a variance rests within the discretion of the court and whether the government agrees to or opposes a motion for a variance is not binding on the court. *United States v. Abu Ali*, 528 F.3d 210, 261 (4th Cir. 2008) ("when reviewing a variance sentence, we 'must give due deference to the district court's decision' and cannot reverse simply because we 'might reasonably have concluded that a different sentence was appropriate'"). Even assuming substantial or extraordinary restitution was made and the

---

[3] Paragraph 4 of the plea agreement states in part:
> The Defendant understands that the matter of sentencing is within the sole discretion of the Court and that the sentence applicable to the Defendant's case will be imposed after the Court considers as advisory the United States Sentencing Commission Guidelines, Application Notes and Policy Statements, as well as the factors set forth in Title 18, United States Code, Section 3553(a). The Defendant also understands that Defendant's sentence has not yet been determined by the court, and that any estimate of a probable sentencing range Defendant may have received from Defendant's attorney, the Government or the United States Probation Office is only a prediction, not a promise, and is not binding on the Government, the Probation Office or the Court.

4

government did not oppose a defense motion for a variance, the court would be well within its discretion to deny the motion. If such were the case, the court's denial of the motion for a variance would not be a basis to withdraw a guilty plea.[4]

Rule 11(d) of the Federal Rules of Criminal Procedure provides that: "A defendant may withdraw a plea of guilty or nolo contendere . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d). Once the trial court conducts a Rule 11 colloquy and finds the plea to be knowing and voluntary, as was the case here, the validity of the plea and the defendant's corresponding guilt are deemed to be conclusively established unless compelling reasons exist to the contrary. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *Via v. Superintendent, Powhatan Corr. Ctr.*, 643 F.2d 167 (4th Cir. 1981). A guilty plea is a "'grave and solemn act,' which is 'accepted only with care and discernment.'" *United States v. Hyde*, 520 U.S. 670, 677 (1997). "If an appropriately conducted Rule 11 proceeding is to serve a meaningful function, on which the criminal justice system can rely, it must be recognized to raise a strong presumption that the plea is final and binding." *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992).

In determining whether to allow a defendant to withdraw his guilty plea, the court's inquiry is ordinarily confined to an evaluation of whether the plea was counseled and voluntary. *United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993). The following factors

---

[4] The court is unaware of any authority for the proposition that the court's denial of a motion for a variance sentence can serve as the basis to withdraw a guilty plea, which the court found to be knowing and voluntary. *See, e.g., United States v. Lambert*, 994 F.2d 1088, 1093 (4th Cir. 1993) (trial court did not abuse its discretion in denying motion to withdraw guilty plea by defendant who entered plea in expectation of lower sentence).

are considered in determining whether a defendant has offered a fair and just reason for withdrawal: 1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary; 2) whether the defendant has credibly asserted his legal innocence; 3) whether there has been a delay between the entering of the plea and the filing of the motion; 4) whether the defendant has had close assistance of competent counsel; 5) whether withdrawal will cause prejudice to the government; and 6) whether it will inconvenience the court and waste judicial resources. *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991).

Dr. Zavell does not challenge the adequacy of the plea colloquy. As stated above, Dr. Zavell's challenge is that the purpose of the plea agreement was frustrated by the actions of the government, and therefore, Dr. Zavell should be permitted to withdraw his guilty plea. This argument fails for the reasons stated above. Additionally, considering the *Moore* factors, Dr. Zavell has failed to establish an entitlement to withdraw his guilty plea under *Moore*.

Dr. Zavell has not offered any proof that his guilty plea was not knowing or voluntary. Dr. Zavell has certainly not asserted his legal innocence of the charges for which he pled guilty. Although there was little delay between Dr. Zavell's plea of guilty and this motion, that factor does not weigh heavily in the court's analysis. As for competence of counsel, Dr. Zavell's counsel has an established reputation as an excellent litigator whose competence has never come into question. With regard to the prejudice prong, as part of the plea agreement, the government agreed to dismiss the charges against Dr. Zavell's wife. While Susan Zavell's counsel indicated she would agree to be re-indicted, it is unclear whether the statute of limitations could result in a dismissal of the new charges and whether the statute of limitations would be raised as a defense. The court therefore concludes the government may suffer

prejudice if Dr. Zavell were permitted to withdraw his guilty plea.[5]  Finally, although Dr. Zavell pled guilty before jury selection, the court expended substantial resources in preparation for the trial of this matter.  To allow Dr. Zavell to withdraw his guilty plea because of a consequence of his guilty plea, which the U.S. Attorney's office had no control over, would waste judicial resources and inconvenience the court.  In short, the court is not satisfied that the defendant has established a "fair and just reason" for withdrawal of his guilty plea under Rule 11(d).

The record indicates that Dr. Zavell received the full benefit of the bargain of his plea agreement and knowingly and voluntarily pled guilty to count two of the indictment.  Two serious charges against him were dropped and all charges against his wife were dropped as a result of his agreement to plead guilty.  Also, Dr. Zavell has been permitted to remain free on bond for a substantial period of time so that he could have the opportunity to support his family and make restitution to the government.  Nothing in the plea agreement required Dr. Zavell to be employed as an emergency room physician and the plain language of the plea agreement did not provide that Dr. Zavell's guilty plea was contingent on his continued employment.[6]  Dr. Zavell is not prohibited from using any other means or resources to attempt to make restitution.

---

[5] Regardless of the prejudice factor, the court believes consideration of other factors, on balance, still support a denial of the motion.

[6] Many people lose their employment as a result of pleading guilty to federal crimes. Under the terms of the plea agreement, regardless of his employment status or the amount of restitution paid, Dr. Zavell is not precluded from making a motion for a variance on other grounds including, but not limited to, the loss of livelihood and its resulting financial impact.

7

## **Conclusion**

For the reasons stated above, Defendant's [Docket Entry #147] motion to withdraw his guilty plea is **DENIED**.

**IT IS SO ORDERED**.

August 19, 2009         s/ R. Bryan Harwell
Florence, SC        R. Bryan Harwell
       United States District Judge